BERNARDO DÍAZ ET UX., Plaintiffs and Appellees, *v.* PUERTO RICO WATER RESOURCES AUTHORITY, Defendant and Appellant.

No. 10010. Argued March 28, 1950.—Decided November 30, 1950.

*Gabriel Guerra Mondragón, José Vila Ruiz,* and *Antonio M. Bird,*
for appellant. *F. Hernández Vargas* for appellees.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of
Court.

Bernardo Díaz Colón, 19 years old, was employed by Ra-
món P. Díaz in the cultivation and irrigation of a citrus fruit
farm located in the Santana Ward of Arecibo. On the
morning of May 7, 1946, as Colón set about his chores, he went
to open a zinc shed which housed a motor for the operation of
a water pump. The electric meter was also located inside
the shed. On making contact with the shed, he received an
electric shock which killed him instantly by electrocution.
The wires conducting the electricity to the meter entered the
shed through holes in the wall of the shed and were protected
at that point by insulators or "china tubes." The electrifica-
tion of the zinc shed was due to the fact that one of the "china
tubes" which protected the wires entering the shed, had slip-
ped away by the action of the wind, and the covering of the
wire had deteriorated through friction against the shed, until
the wire lost effective insulation.

In an action for damages, the lower court granted the
complaint awarding the plaintiffs damages in the amount of
$6,000, plus costs and $500 as attorney's fees. The defend-
ant contends on appeal that it was an error (1) to declare the
plaintiffs—Díaz Colón's parents—sole heirs of their son Ber-
nardo; (2) and (3) to declare that pursuant to the contract
for the supply of electricity to the farm of Ramón P. Díaz,
the defendant was responsible for the defects in the instal-
lation, even though it had not made such installation, and in

deciding that had the wires been more tense, they would have stood better the action of the wind and perhaps the accident would not have happened.

 The first assignment of error is without merit. The cause of action exercised herein is founded on § 1802 of the Civil Code, 1930 ed.—*Méndez* v. *Serracante*, 53 P.R.R. 807, and cases therein cited—by virtue and as a consequence of the defendant's negligent omission which caused the death of a minor. It is incumbent on and may be originally maintained by the persons sustaining the damage, among whom are the natural parents of the minor, pursuant to Rule 17 (*j*) of the Rules of Civil Procedure. *Asencio* v. *Am. Railroad Co.*, 66 P.R.R. 218. It is not founded on a hereditary right, for which a declaration of heirship is necessary.[1] Hence, it was sufficient in this connection for the plaintiffs to prove, to the satisfaction of the lower court, their status of natural parents of the deceased minor. This was amply proved, as well as the fact that the minor never married nor left any descendants.

 The fact that Bernardo Díaz Colón had two younger brothers who also lived with his parents and that due to this circumstance they could benefit indirectly from the aid afforded the family by their older brother, is not by itself sufficient to vest them with a cause of action by his death, nor to bar plaintiffs' claim in the present case. Besides, under § 143 of the Civil Code, 1930 ed., the obligation to support each other exists, under the conditions therein set forth, only among *legitimate* brothers, the brothers in this case being *natural*, and not legitimate, brothers of Bernardo Díaz Colón.

 The second and third assignments of error are groundless. The evidence in the record warrants the finding of the lower court as to the defendant's responsibility for the accident. According to the contract in force on the

---

[1] The action which under § 1802 may be maintained, pursuant to Rule 17 (*k*) of the Rules of Civil Procedure, by the *heirs* or personal representatives of the decedent, is not involved either.

date of the accident, between the defendant and the owner of the farm for whom Díaz Colón worked, for the supply of electricity, the defendant had the exclusive control of the lines up to the meter which was located inside the afore-mentioned zinc shed.[2] The fact that the lines, from the primary lines up to the meter, had not been originally installed by it, constitutes no defense for the defendant, for upon adopting the contract entered into by its predecessor—Utilization of the Water Resources—it assumed all liability as to said wires, and it was its duty to keep them under such standards of safety as to prevent accidents like the one which occurred. The case of negligence established by the plaintiffs' evidence was not overcome in any way whatsoever by defendant's evidence.

The judgment will be affirmed.

---

[2] Clauses 3, 4, and 5 of the "Contract to Supply Electricity" executed on August 7, 1941 by Ramón P. Díaz and the "Utilization of the Water Resources"—of which the defendant herein is the successor—provide as follows:

"3. The electricity will be supplied at or near the place where the consumer's installation is located and measured at that place by a meter owned by and under the control of The People of Puerto Rico, after said electricity has been transformed to the proper voltage for the installation.

"4. The consumer will be responsible for the due care and use of the electricity after it has passed through the Government meter, and he will not use this electricity for any other purpose nor in any other place except the one stipulated herein.

"5. The consumer is absolutely forbidden to tamper with the wires, transformers, meters and other apparatuses which form part of the Government installation, but he will take all necessary precautions in order to avoid damage to the aforesaid installation, and in case of defective service, he will notify promptly the authorized employee or agent in charge of the district where the installation is located or the Office of Utilization of the Water Resources."